# INDIRECT LOAN PURCHASE AGREEMENT

This Indirect Loan Purchase Agreement ("Agreement") is hereby made and entered into by and between Tristar Acceptance, LLC ("Tristar") and Aqua Finance, Inc. ("Aqua"). For reference purposes, this Agreement shall be deemed to be dated February 1, 2014. Tristar and Aqua shall respectively be referred to as a "Party" and collectively as the "Parties".

1.     Purpose. Tristar is an indirect consumer automobile finance company providing financing to consumers through loans originated by automobile dealers. Aqua is a finance company licensed to purchase indirect consumer finance contracts. Tristar desires to sell to Aqua and Aqua desires to purchase from Tristar all right, title, and interest in certain automobile loans that meet Aqua underwriting standards ("Loans"). See Exhibit A for Aqua underwriting standards. Aqua, in turn, may sell all or a portion of the Loans to other lenders. Aqua and Tristar in this Agreement desire to clearly identify the roles and responsibilities of each Party as they relate to the sale of the Loans.

2.     Term. The term of this Agreement shall be the period within which the terms and conditions of this Agreement shall be applicable. The term of this Agreement shall commence on February 1, 2014 and continue for a period of three (3) years (the "Initial Term") unless earlier terminated upon the occurrence of an Event of Default, as further defined in Section 10.2 hereof. This Agreement will automatically renew for an additional one (1) year term (the "Renewal Term") unless written notice is received from the other Party at least thirty (30) days but not greater than sixty (60) days prior to the end of the Initial Term, or any subsequent Renewal Term. Any Renewal Terms shall also be subject to earlier termination upon the occurrence of any Event of Default. In addition, should Tristar not sell to Aqua the dollar amount of Loans set forth below, Aqua may, in Aqua's sole discretion, terminate this Agreement on 30 days notice to Tristar.

3.     Volume Requirements. Tristar will have $1,000,000 of Loans to sell to Aqua no later than April 30, 2014. Total Loans sold to Aqua by Tristar shall be no less than $35,000,000 between February 1, 2014 and March 31, 2015. Total Loans sold to Aqua by Tristar shall be $70,000,000 between February 1, 2015 and January 31, 2016. Thereafter, Loans sold to Aqua by Tristar shall not be less than $6,000,000 per month during the term of this Agreement.

4.     Pools, Super Pools and Reserves. Aqua will buy Loans from Tristar in pools of $1,000,000 or more. Each Pool shall have a weighted average FICO score of 600 and an average per annum interest rate of not less than 18%. A cash reserve of $50,000 shall be paid by Tristar at the time of signing this Agreement. The first Pool and every Pool thereafter in the first Super Pool shall have a reserve of 2% and to the extent these are cash reserves, such funds shall be held in accounts established in the name of Aqua and shall be noted on Aqua's financial statements as the "Tristar Reserve". (The total reserve for the first Super Pool, assuming it contains $10,000,000 of Loans, shall be $250,000.) Thereafter the reserve shall be 2.5% of each Pool calculated as of the date of purchase. Pools shall be grouped together until there are ten Pools and this group of Pools shall be referred to as a "Super Pool." The reserves of each Pool in a Super Pool shall be used to apply against losses in any Pool in that Super Pool. Once a Super Pool has ten Pools in it, that Super Pool shall be static (i.e. no new Loans or Pools shall be added

to that Super Pool). Absent fraud by Tristar and other than as set forth in Paragraph 9.8, Aqua shall have no recourse against Tristar for nonperforming Loans except that Aqua may apply the reserves as set forth below. At the time the last loan is paid in a Super Pool if there is any reserve that has not been applied for the reasons set forth below, such excess reserve shall be paid to Tristar.

5. **Use of Reserves.** In the event of a Customer default, Aqua will attempt to repossess and sell the automobile. In the event the sale results in a net loss, or if for some reason the automobile cannot be sold, Aqua shall have the right to use the reserve to offset Aqua's net loss and also to cover Aqua's out-of-pocket costs of collection. Any later recoveries of amounts drawn from the reserve shall be added back to that reserve. Aqua shall maintain records of how reserves have been applied and such records shall be available for review by Tristar upon reasonable request, but not more frequently than once per month.

6. **Payments to Tristar.** For Pools with a weighted average FICO score of 620 and above, Aqua will purchase Loans from Tristar for the full principal balance then outstanding (less the applicable reserve). For Pools with a weighted average FICO score between 600 and 620, Aqua will purchase Loans from Tristar for the full principal balance then outstanding, less a .75% discount (and less the applicable reserve). In addition, Tristar shall be paid a premium on Pools where the average per annum interest rate is in excess of 18%. The premium shall equal 75% of what the average per annum interest rate is in excess of 18%. For example, if the Pool average per annum interest rate is 19%, then Aqua shall pay Tristar 75% of 1% which would be .75%. Tristar shall have the right to collect a fee from the dealer and in addition, Tristar shall keep any discounts Tristar negotiates with the dealer. Any interest accrued prior to closing shall belong to Tristar, subject to Aqua's right to offset its servicing fee.

7. **Aqua Represents and Warrants.**

    *7.1 Due Organization and Good Standing.* Aqua is an indirect lender, validly existing and in good standing under the laws of the state of Wisconsin. To the extent required by applicable law, Aqua is properly licensed and qualified to transact business in all appropriate jurisdictions.

    *7.2 Authority and Capacity.* Aqua has all requisite power, authority and capacity to enter into this Agreement and to perform the obligations required of it. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have each been duly and validly authorized by all necessary action. This Agreement constitutes the valid and legally binding agreement of Aqua enforceable in accordance with its terms, subject to bankruptcy laws and other similar laws of general application affecting rights of creditors and subject to the application of the rules of equity, including specific performance.

    *7.3 Litigation.* There is no action, suit or proceeding or investigation pending or to Aqua's knowledge, threatened against Aqua that, if determined adversely to Aqua, would adversely affect the sale of the Loans or the execution, delivery or enforceability of this Agreement.

177727

8.  Tristar Represents and Warrants:

8.1  *Due Organization and Good Standing.*  Tristar is a limited liability company validly existing and in good standing under the laws of the state of its organization.  To the extent required by applicable law, Tristar is properly licensed and qualified to transact business in all appropriate jurisdictions and to conduct all activities performed with respect to this Agreement.

8.2  *Authority and Capacity.*  Tristar has all requisite power, authority and capacity to enter into this Agreement and to perform the obligation required of it.  The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have each been duly and validly authorized by all necessary action.  This Agreement constitutes the valid and legally binding agreement of Tristar enforceable in accordance with its terms, subject to bankruptcy laws and other similar laws of general application affecting rights of creditors and subject to the application of the rules of equity, including specific performance.

8.3  *Compliance with Contracts and Regulations.*  Prior to the sale of Loans to Aqua, Tristar will have complied with all material obligations under all contracts to which it was a party, and under applicable law, to the extent that such obligations might affect any of the Loans being purchased by Aqua hereunder.  Tristar has done and Tristar will do, no act or thing which may adversely affect the Loans.

8.4  *Litigation, Compliance with Laws.*  There is no litigation, proceeding or governmental investigation pending, or any other injunction or decree outstanding, which might materially affect any of the Loans.  Additionally, there is no litigation, proceeding or governmental investigation existing or pending or, to the knowledge of Tristar threatened, or any order, injunction or decree outstanding against or relating to Tristar, which could have a material adverse effect upon the Loans, nor does Tristar know of any basis for any such litigation, proceeding, or governmental investigation.  Tristar has not violated any applicable law, regulation, ordinance, order, injunction or decree, or any other requirement of any governmental body or court, which may materially affect any of the Loans.  Tristar will notify Aqua within 14 days of the occurrence of any pending litigation, proceeding, governmental investigation, or other action as contemplated under this section.

9.  Tristar Covenants.

9.1  *Assistance.*  Tristar will provide reasonable assistance to Aqua as Aqua may reasonably request.

9.2  *Exclusivity.*  During the term of this Agreement, Tristar will exclusively utilize Aqua as a "first look" purchaser of Loans.  Such Loans shall be in accordance with the Aqua Underwriting Standards (attached as Exhibit A, as may be amended from time to time by Aqua).  Such exclusivity shall not be applicable if Aqua declines in writing to purchase or participate in a pool of automobile loans established by Tristar and another lender elects to purchase or participate in such pool.  The exclusivity waiver will be on a loan-by-loan basis.

Page 3 

9.3     *Financials.*  Tristar shall provide Aqua with Tristar's monthly financial reports and annual financial statements in a form and substance acceptable to Aqua and additional reporting as reasonably required to satisfy any audit or regulatory obligations.

9.4     *Reserved.*

9.5     *Seller Assignment.*  For each Pool Tristar sells to Aqua, an assignment substantially similar to the Seller Assignment set forth in Exhibit B shall be provided by Tristar.

9.6     *Power of Attorney.*  Tristar shall provide Aqua with a Power of Attorney with each Pool substantially as set forth in Exhibit C.

9.7     *Loans Sold to Aqua.*  Tristar represents and warrants that, with respect to each Loan offered to or financed by Aqua:

9.7.1    The Loan will be originated in one of the following states:  Florida, Georgia, North Carolina and South Carolina.

9.7.2    The Loan was originated from a bona fide properly licensed automobile sales dealership, with which Tristar has a written dealer agreement similar to Exhibit D.

9.7.3    The Loan is an agreement for the financing of the Automobile described in the Loan and Tristar has not taken any action or omitted to take any action which could reasonably have the effect of impairing the Loan in any way;

9.7.4    The Loan is enforceable in accordance with its terms and content and is no more than 30 days past due at the time Aqua purchases the Pool containing the Loan;

9.7.5    The Loan incorporates all the terms and conditions of this Agreement and is the final expression of the agreement of the Customer and Aqua;

9.7.6    The Customer has no right of rescission or cancellation, claims or defenses, set-offs or counterclaims of any kind whatsoever as to or against the Loan or against Tristar;

9.7.7    All signatures, names, addresses, telephone numbers, figures and other statements of fact set forth in the Loan are genuine, true and correct and the Customer has the legal capacity to execute the Loan and create a legally binding contract;

9.7.8   If the negotiation of the Loan was in a language other than English, an accurate, written translation of every term and condition in the language of the negotiations was given to the Customer before the Customer signed the Loan;

9.7.9   On the date of the Loan, the Automobile which is the subject of the Loan is in satisfactory condition and is in the possession of the Customer;

9.7.10  All vehicle titling and registration documentation and all insurance documentation is current and in the possession of the Customer as required by law;

9.7.11  The security interest or ownership interest held by Aqua in the Automobile is validly perfected and creates a first priority lien, free of any security interest, claim or lien by any third party; and

9.7.12  The Loan complies with the applicable Financing Program and with all applicable state and federal laws and regulations.

9.8   *Recourse.*  Tristar shall purchase any Loan, at a price equal to the outstanding loan balance of the Loan plus the applicable incentives paid to Tristar and dealer:

9.8.1   Where the Loan, at the time of its origination, did not materially conform to the requirements of the applicable Financing Program or representations and warranties set forth above; or

9.8.2   Where the first payment due on the Loan was not paid by the Customer within 30 days of its scheduled due date.

10.   It is Mutually Understood and Agreed By and Between the Parties That:

10.1   *Responsibility.*  Tristar and Aqua shall each be responsible for its own activities and utilize its own resources, including expenditure of its own funds, in performing the terms of this Agreement except that Aqua shall have available the funds in the reserves and may use such reserve funds as specified in this Agreement. Each Party shall carry out its separate activities in a coordinated and mutually beneficial manner. Aqua will solely be responsible for determining credit standards and Tristar shall make credit decisions based entirely on Aqua's credit standards, which may change from time to time.

10.2   *Events of Default.*  The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

10.2.1  failure to meet the volume requirements outlined in Paragraph 3.

10.2.2  failure on the part of Tristar to satisfy the conditions outlined in Paragraphs 8 and 9.

10.2.3  Aqua net losses on loans purchased from Tristar exceed 5% on an annualized basis.

In the case of any event described in the foregoing subparagraphs, Aqua shall have the right to terminate this Agreement upon thirty (30) days prior written notice of the occurrence of an Event of Default to Tristar pursuant to Section 10.

10.3  *Costs and Expenses.*  Except as specifically provided to the contrary in this Agreement, Aqua and Tristar shall each bear its own accounting, legal and related costs and expenses in connection with the negotiation and preparation of this Agreement and the performance by each of Aqua and Tristar of its respective obligations arising under this Agreement.

10.4  *Confidentiality of Information.*  Tristar and Aqua and their respective Affiliates shall cause their respective directors, members, officers, employees and authorized representatives to hold in strict confidence and not use or disclose to any other party except their Affiliates without the prior written consent of the other party all information concerning customers or proprietary business procedures, servicing fees or prices, policies or plans of the other party of any of its or any of its affiliates received by them from the other party in connection with transactions contemplated hereby.

10.5  *Safeguarding Rule.*  The parties agree to protect Non-Public Personal Information ("NPI") about the Obligors within the meaning of Title V of the Gramm-Leach-Bliley Act, any comparable state laws, and related federal and state regulations, including the FTC Privacy and Safeguards regulations, 16 CFR parts 313 and 314, respectively (collectively, the "FTC Safeguarding Rules"). Each party warrants and represents that it has and agrees to maintain physical, electronic, and procedural controls and safeguards in compliance with the FTC Safeguarding Rules to protect NPI from unwarranted disclosure. Each party will implement and maintain appropriate measure designed to meet the following objectives: (i) to ensure the security and confidentiality of Obligor NPI; (ii) to protect against any anticipated threats or hazards to the security or integrity of such information; and (iii) to protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any Obligor.

10.6  *Notices.*  All notices, requests, demands and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered, sent by overnight courier, or mailed by certified mail, return receipt requested, postage prepaid, or transmitted by facsimile and confirmed by a similar mailed writing:

177727

(a)    If to Aqua, to:

        Robert D. Chadwell, President and CEO
        Aqua Finance, Inc.
        P.O. Box 844
        Wausau, WI 54402-0844
        Phone:  715/848-5425
        Fax:  715/848-6220

(b)    If to Tristar, to:

        Robert Nelson, _____
        Tristar Acceptance, LLC
        327 Plaza Real Boulevard, Suite 301
        Boca Raton, FL 33432
        Phone:  561/674-6710
        Fax:  _____

or to such other address as Aqua or Tristar shall have specified in writing to the other.

      10.7    *Applicable Law.*   The construction of this Agreement and the rights, remedies, and obligation arising by under, through, or on account of it shall be governed by the internal laws of the State of Wisconsin, without regard to is conflicts of laws principles, except to the extent the same are preempted by the laws of the United States.

      10.8    *Jurisdiction and Venue.*   Aqua and Tristar mutually agree that this Agreement and the relations between the parties shall be construed in accordance with the laws of the State of Wisconsin without regard to the conflicts of laws principles thereof.  Any legal cause of action arising out of a dispute concerning this Agreement or the enforceability of any part thereof shall be subject to the jurisdiction of the courts of Marathon County, State of Wisconsin or in the United States District Court for the Western District of Wisconsin.

      10.9    *Integration.*   This Agreement constitutes a final and complete integration of the Agreement of the parties respecting the subject matter hereof, thereby superseding all previous agreements.  There are no contemporaneous oral agreements.  The parties acknowledge that as Loans are purchased by Aqua from Tristar and possibly sold to other lenders, other documents including, but not limited to Assignment Agreements, Multiple Party Loan Participation Agreements and Servicing Agreements, will be required.  In the event of any ambiguity or conflict between such other documents and this Agreement, the terms of the other documents shall apply to that specific transaction.

      10.10    *Modification.*   This Agreement may not be changed orally but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.  Subject to the foregoing, any of the terms or conditions of this Agreement may be waived or modified at any time by the party entitled to the benefit thereof, but no such waiver, express or implied, shall affect or impair the right of the waiving

Page 7



party to require observance, performance, satisfaction of either (1) the same term or condition as it applies on a subsequent or previous occasion or (2) any other term or condition hereof.

10.11 *Mutual Construction.* This Agreement shall be deemed to have been drafted by both Tristar and Aqua. Therefore, any ambiguities shall not be construed against either Party.

10.12 *Captions.* Paragraph captions in this Agreement are for ease of reference only and shall be given no substantive or restrictive meaning or significance whatsoever.

10.13 *Counterparts.* This Agreement may be executed in two counterparts, each of which shall be an original regardless of whether all parties sign the same document. Regardless of the number of counterparts, they shall constitute only one agreement. It shall not be necessary in making proof of this Agreement to produce or account for more than one counterpart.

10.14 *Attorneys' Fees.* If any action of law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees from the other party. Such fees may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose. Such fees shall be in addition to any other relief that may be awarded.

10.15 *Binding Effect and Assignment.* This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns. Nothing in this Agreement, express or implied, is intended to confer on any person other than the parties hereto and their successors and assigns, any rights, obligations, remedies or liabilities. It is expressly agreed that Aqua may assign any Loan or grant a security interest in the Loans and/or Automobiles in whole or in part without notice to Tristar, and any such assignee may further assign the Loan and/or security interests, and Tristar shall remain liable to such assignee for the warranties and representations related to the Loans and Automobiles as set forth in this Agreement. However, neither this Agreement nor any right or obligation other than those that relate to the Loans and/or Automobiles will be assigned or transferred by operation of law or otherwise, by either party, in whole or in part, without the prior written consent of the other party and any such purported assignment or transfer without such consent will be void; provided, however, each party may assign any or all of its rights and obligations under this Agreement to one or more of its affiliates.

10.16 *Severability.* In case any provision or obligation under this Agreement shall be deemed invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation, shall not in any way be affected or impaired thereby in any other jurisdiction.

10.17 *Survival of Obligations.* Paragraphs 4 and 5 shall survive the cancellation, completion, expiration, or termination of this Agreement.



TRISTAR ACCEPTANCE, LLC

By: _____

_Robert G Nelson_
(Print Name)

_President / Chairman_
(Title)

AQUA FINANCE, INC.

By: _____

_Brian J. Sobotka_
(Print Name)

_Executive Vice President / CFO_
(Title)

**EXHIBIT A**

**Underwriting Standards for Purposes of the Indirect Loan Purchase Agreement
Between Tristar Acceptance, LLC and Aqua Finance, Inc.**

*(These underwriting standards are subject to change on 30 days notice from Aqua Finance, Inc. to Tristar Acceptance, LLC.  During that 30 day period Tristar may provide input to Aqua on the proposed changes.)*

### Tristar Auto Finance Programs

| STRUCTURE | Program A | Program B |
|---|---|---|
| Max Wholesale Advance | 120% plus Tax, Tags, License and approved adds (VSC, GAP, GPS) | |
| Wholesale | Factory invoice, auction ticket or the published average condition wholesale value from Blackbook or NADA. The use of Blackbook or NADA may be mandated by region. | |
| Minimum Discount | 0% | 4% |
| Acquisition Fee | $395 | |
| APR | 8% | 20.75% maximum |
| Max Amount Financed | $40,000 | $25,000 |
| Minimum Down Payment | None | |
| Mileage | 18,000 miles per model year | |
| Restricted Vehicles | No Branded Titles; Salvage, Gray Market, Rebuilds, Commercial | |

| Model Year | Vehicle Age | Max Term |
|---|---|---|
| 2014 | Current/New | 72 months |
| 2013 | 1 year old | 72 months |
| 2012 | 2 years old | 72 months |
| 2011 | 3 years old | 72 months |
| 2010 | 4 years old | 72 months |
| 2009 | 5 years old | 60 months |
| 2008 | 6 years old | 60 months |
| 2007 | 7 years old | 48 months |
| Maximum Mileage | Must be less than 100,000 miles at loan inception | |

| BUYER PROFILE | | |
|---|---|---|
| Residence | 12 months at current residence or 24 months in area or homeowner | 6 months at current residence or 24 months in area or homeowner |
| Employment | 12 months at current job or 24 months same area/field | 6 months at current job or 24 months in area/field |
| Co-Signors | NO Non-Spouse Co-Signors | NO Non-Spouse Co-Signors |
| Minimum Income | $1,800 – POI for all Applications | $1,800 – POI for all Applications |
| Debt to Income | 45% | 45% |
| Payment to Income | 18% (if monthly income is over $3K 20%) | 18% (if monthly income is over $3K 20%) |
| Minimum FICO | 650 | 580 |
| Time in Bureau | A minimum of 2 years credit history | A minimum of 2 years credit history |
| Bankruptcy | None | Bankruptcy must be discharged prior to purchase of contract.  No open bankruptcy and No multiple bankruptcies |
| Repossession | None | None |

| OTHER | | |
|---|---|---|
| Recourse | First payment recourse on all deals | |
| Main Office Number | | |
| Email | | |
| Web | | |
| GPS | We would like to request that we get GPS Units installed on all Program B Contracts for INDEPENDENT Dealers, not required for FRANCHISE Dealers | |

177727

